UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RAFAEL SANDOVAL GONZALEZ, ) | No. ED CV 17-302-PLA |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| v. ) | |
| ) | |
| NANCY BERRYHILL, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 17, 2017, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on February 24, 2017, and March 8, 2017. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on October 5, 2017, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on April 26, 1955. [Administrative Record ("AR") at 26, 148.] He has past relevant work experience as a mechanic. [AR at 26.]

On April 12, 2013, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since October 21, 2011. [AR at 19, 148-49.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 19, 99.] A hearing was held on June 26, 2015, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [AR at 33-61.] A vocational expert ("VE") also testified. [AR at 43-46, 54-59.] On August 17, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from October 21, 2011, the alleged onset date, through August 17, 2015, the date of the decision. [AR at 19-28.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 10-12.] When the Appeals Council denied plaintiff's request for review on January 13, 2017 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 21, 2011, the alleged onset date.[1] [AR at 21.] At step two, the ALJ concluded that plaintiff has the severe impairments of hearing loss and vertigo. [Id.] He found that plaintiff's conditions of "degenerative disk disease of the cervical spine, obesity, hyperlipedemia, status post transischemic attack, headaches, and a thyroid condition . . . are considered non-severe because it [sic] has no more than a minimal effect on [his] ability to engage in work related activities." [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ

---

[1] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2016. [AR at 21.]

4

further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform a full range of work at all exertional levels but with the following exertional limitations:

> [He] must avoid situations requiring acute hearing such as needing good hearing in order to avoid dangerous situations or hazards. He should not be responsible for safety operations or care for the safety of others. He cannot work at heights or around dangerous moving machinery.

[AR at 22.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform his past relevant work as a mechanic. [AR at 26, 54.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "hand packager" (Dictionary of Occupational Titles ("DOT") No. 920.587-018), "scrap sorter" (DOT No. 509.686-108), and "laundry worker" (DOT No. 361.684-014). [AR at 27, 54.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of October 21, 2011, through August 17, 2015, the date of the decision. [AR at 27-28.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) concluded plaintiff's headaches are non-severe; (2) did not include plaintiff's vertigo in his RFC assessment; and (3) failed to evaluate plaintiff's subjective symptom testimony. [JS at 3.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

**A.     SUBJECTIVE SYMPTOM TESTIMONY**

**1.     Legal Standard**

To determine the extent to which a claimant's symptom testimony must be credited, the

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

Ninth Circuit has "established a two-step analysis." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (citing Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).[3] "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins, 466 F.3d at 883), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit his . . . ability to perform work-related activities . . . ." SSR[4] 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing

---

[3] On March 28, 2016, after the ALJ's assessment in this case, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2.

The ALJ's August 2015 decision was issued before March 28, 2016, when SSR 16-3p became effective, and there is no binding precedent interpreting this new ruling including whether it applies retroactively, although the Ninth Circuit in Trevizo noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expect to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p). SSR 16-3p on its face states that it is intended only to "clarify" the existing regulations. However, because neither party specifically contends that SSR 16-3p should apply herein, the Court need not resolve the retroactivity issue. Notwithstanding the foregoing, SSR 16-3p shall apply on remand.

[4] "SSRs do not have the force of law. However, because they represent the Commissioner's
(continued...)

reasons for rejecting a claimant's testimony about the severity of his symptoms. Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102. During this inquiry, the ALJ may use "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996)). Where, as here, plaintiff has presented evidence of underlying impairments, and the ALJ did not make a finding of malingering [see generally AR at 22-26], the ALJ's reasons for rejecting a claimant's subjective symptom testimony must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina, 674 F.3d at 1112); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 345-46 (9th Cir. 1991) (en banc)). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

**2. The Parties' Contentions**

Plaintiff contends the ALJ "did not evaluate plaintiff's subjective complaints." [JS at 13.] He submits that the ALJ only alludes to the fact that plaintiff -- who had the assistance of a Spanish interpreter who sat next to him and spoke directly into his ear at the hearing -- answered

---

⁴(...continued)
interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

7

the ALJ's questions quickly, had lived in the United States for 40 years, had passed the citizenship test to become a United States citizen, and had "completed courses to obtain certification as an auto mechanic," thereby raising doubts in the ALJ's mind about plaintiff's inability to communicate in English without the need for an interpreter. [Id. (citing AR at 25).] Plaintiff also states that the "ALJ ignored medical evidence that affirms the severity and frequency of Plaintiff's vertigo, hearing loss and headaches," and did not explain the nexus between his doubts about plaintiff's inability to communicate in English and the severity and intensity of plaintiff's complaints. [Id.]

Defendant responds that the ALJ identified several reasons for discounting plaintiff's subjective symptom testimony that his hearing aids and ear surgery had not helped his hearing, and that he was unable to hear at all with his right ear. [JS at 14 (citing AR at 25, 38).] For instance, in addition to plaintiff's "quick" responses at the hearing, the ALJ noted that one of plaintiff's treating providers "put a question mark after Plaintiff's statement that his hearing aids were of no benefit, which the ALJ reasonably interpreted to mean that *they too* were skeptical of Plaintiff's claim." [JS at 15 (citing AR at 25, 285) (emphasis added).] Defendant also notes the ALJ's finding that "plaintiff consistently indicated that his preferred learning mode was verbal (and not demonstration, visual, or written), 'which also creates an inference that [Plaintiff] can hear'." [Id. (citing AR at 25, 285, 286, 292, 293, 295, 312, 313, 319, 322, 325).] Defendant further contends that the ALJ gave valid reasons for discounting plaintiff's testimony regarding his vertigo. [JS at 16.] For instance, the ALJ noted that plaintiff told his doctors his medications helped "resolve" his dizziness, and another time he denied having any dizziness. [Id. (citing AR at 25, 376, 383-84).] Defendant submits that the ALJ was entitled to discount plaintiff's subjective symptom testimony based on the fact that his symptoms improved with use of medication.[5] [Id.

---

[5] Defendant's contention that the ALJ discounted plaintiff's subjective symptom testimony because his condition was relieved by medication, was not a reason given by the ALJ; "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered *by the ALJ* -- not post-hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Astrue, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (emphasis added, citation omitted); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not
(continued...)

(citation omitted).] Additionally, defendant asserts that the ALJ's findings that plaintiff had lived in the United States for 40 years, passed the citizenship test, and obtained certification as an auto mechanic, were valid reasons, applying "ordinary techniques of credibility evaluation," that "may be properly taken into account in determining whether or not [the claimant's] claim of disabling pain should be believed.'" [Id. (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); AR at 25, 37, 169).]

### 3. Analysis

In "assessing" plaintiff's subjective symptom testimony, the ALJ stated that "[a]part from objective findings, there are substantial reasons pursuant to [SSR] 96-7p to conclude that [plaintiff] remains able to engage in a wide range of work-related activities." [AR at 25.] He then went on to discuss the following: (1) despite plaintiff's testimony that the tube surgery did not help his hearing, that he had completely lost hearing in his right ear, that he can "hear a little with his left ear," and that the hearing aids "help a little bit," plaintiff answered quickly at the hearing; (2) plaintiff's treating providers "also appeared skeptical" of plaintiff's report that the hearing aids were of no benefit, based on the purported "question mark" that appeared after that statement in the record; and plaintiff "has indicated that his preferred learning mode is verbal," "which also creates an inference that [he] can hear"; (3) plaintiff's statement that the vertigo medication does not help his dizziness is contradicted by one note indicating that Meclizine "resolves" the dizziness, and another note where plaintiff "denied dizziness"; and (4) although plaintiff testified that he could not read English, but could speak and write it a little, he had lived in the United States for 40 years, passed the citizenship test, and completed courses to obtain certification as an auto mechanic. [Id. (citations omitted).] The ALJ concluded that "[a]ll of the aforementioned factors are inconsistent with the presence of an incapacitating or debilitating medical condition." [Id.]

---

[5](...continued)
invoke in making its decision."). The Court will not consider reasons for discounting plaintiff's subjective symptom testimony that were not given by the ALJ in the Decision. See Trevizo, 862 F.3d at 997 (citation omitted).

9

### a. Inference Regarding Plaintiff's Ability to Speak English

The ALJ noted that because plaintiff quickly answered the ALJ's questions at the hearing, he questioned plaintiff's alleged inability to communicate in English. [AR at 25.] However, as noted by plaintiff, and not disputed by defendant, plaintiff had the assistance of a Spanish interpreter who sat next to him and spoke directly into his ear at the hearing. [JS at 13.] The ALJ pointed to no evidence that plaintiff responded to the ALJ's questions before hearing the Spanish interpretation, or that plaintiff responded to the ALJ's questions in fluent English without the assistance of the interpreter. This was not a specific, clear and convincing reason, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony.

The ALJ also suggested that because plaintiff had lived in the United States for 40 years, had passed the citizenship test to become a United States citizen, had "completed courses to obtain certification as an auto mechanic," and had stated that his preferred learning modality was verbal, doubts were raised about plaintiff's inability to communicate in English without the need for an interpreter. Substantial evidence does not support these inferences. For instance, although several of the treatment records from the ENT clinic reflect in a "check the box" portion of the treatment record that plaintiff's "preferred learning mode" was verbal for purposes of receiving instruction on diet and self care at the treatment visit,[6] numerous treatment records reflect that his daughter or wife sometimes accompanied him to his appointments, that his preferred language is Spanish, and/or that someone was translating for him. [See, e.g., AR at 261, 288, 292, 294, 314, 319, 331, 344, 360-61, 362, 364, 366-67, 368, 370.] There is no dispute that plaintiff has some limited hearing in his left ear with the hearing aid, but the records do not otherwise reflect that plaintiff was fluent in English or that his treating doctors questioned his hearing loss or reports of vertigo and headaches or occipital/mastoid pain. Indeed, the audiology consultative examiner determined that plaintiff had "severe to profound high frequency hearing loss with the right ear, and a profound flat mixed hearing loss with the left ear." [AR at 271-74.] The ALJ also points to

---

[6] The fact that plaintiff's preferred learning mode was verbal for medical treatment instructions could reasonably be interpreted to support plaintiff's testimony that he had limited ability to *read* English.

nothing in the record to indicate that plaintiff's auto mechanic training was conducted in English rather than Spanish. Most importantly, the ALJ never explained how his "doubt" about plaintiff's need for an interpreter at the hearing was in any way related to his finding that plaintiff's testimony regarding the "intensity, persistence and limiting effects" of his symptoms was "not entirely credible," such that the Court can conclude that the ALJ did not arbitrarily discredit plaintiff's testimony. Accordingly, this was not a specific, clear and convincing reason, supported by substantial evidence, to discount plaintiff's subjective symptom testimony.

### b. Inference Regarding Plaintiff's Ability to Hear

The ALJ stated that plaintiff's treating provider put a "question mark" after relaying plaintiff's report that "he doesn't benefit much from H.A. [hearing aid]," leading the ALJ to infer that the treating provider -- like the ALJ -- "appeared skeptical" of plaintiff's report. [See id. (citing AR at 285).] In fact, the random mark after "H.A." just as easily -- and perhaps more closely -- resembles a quick "sketch" by the treating ENT to indicate the right ear. [See AR at 285 (same treatment note referred to by the ALJ includes a similar "sketch," albeit in reverse, resembling a left ear, with a notation about "minimal granulation tissue"); see also id. at 286 (February 1, 2015, note indicating the presence of granulation tissue around the tube placed in plaintiff's left ear[7]), 292 (October 7, 2014, note also indicating a "small amount of [illegible] tissue present" in left ear), 307-08 (March 28, 2014, and May 20, 2014, notes reflecting tissue on right tympanic membrane and including similar "sketch" marks indicating the location of the tissue in the right ear).] The ALJ's assumption that the mark made in the treatment record was a question mark and implied disbelief of plaintiff's report that the right hearing aid was not of benefit, was at most a guess by the ALJ, and was not a specific, clear and convincing reason, *supported by substantial evidence*, to discount plaintiff's subjective symptom testimony.

---

[7] The Court notes that these treatment notes also use the abbreviations AS and AD to indicate left and right ear, respectively.

11

### c. Plaintiff's Vertigo

The ALJ noted that plaintiff's statement that the medication he takes for his vertigo does not help his dizziness, is contradicted by a June 14, 2014, note where plaintiff "denied dizziness," and by another treatment note indicating that plaintiff reported that the medication Meclizine "resolves" his dizziness. [AR at 25 (citing AR at 376, 383-84).] However, the June 14, 2014, treatment note allegedly reflecting plaintiff's implied denial of dizziness during this and "other appointments" [see id. (citing AR at 383-84 ("During other appointments, [plaintiff] has denied dizziness"))], actually states only that plaintiff "*[c]urrently* . . . does not have any . . . dizziness.").] Thus, this note only reflects that on that one treatment date (and *not* on multiple appointment dates), plaintiff was not experiencing vertigo; neither does it reflect that plaintiff *never* experiences dizziness as implied by the ALJ. Indeed, despite the plethora of treatment notes reflecting plaintiff's continuing complaints of chronic dizziness/vertigo [see, e.g., AR at 278, 287 (noting plaintiff's complaint of vertigo and treating plaintiff for shoulder pain after he fell off a trash can), 296 (complaining of vertigo after tubes placed in ears), 298, 301, 304 (complaining of recurrent dizziness), 313 (stating that his medication reduced the occurrences of vertigo), 325, 327, 331, 336, 338, 340, 343-44, 347, 376, 391], the ALJ nevertheless used this one note to imply that plaintiff's hearing testimony that his prescribed medication for vertigo does not help is somehow inconsistent with his statement at the June 14, 2014, treatment visit. Similarly, the ALJ referred to one other treatment record from approximately October 2014, allegedly reflecting that plaintiff had reported that the medication Meclizine "resolved" his dizziness. [AR at 25 (citing AR at 376).] That note, however, actually appears to reflect that not only was plaintiff still *complaining of* chronic dizziness, he had stated that the Meclizine had "relieved," not "resolved" his dizziness. [AR at 376 ("pt c/o chronic dizziness -- Relieved by Meclizine . . .").]

An ALJ may not cherry-pick evidence to support a conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination. Holohan, 246 F.3d at 1207 (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries . . . and ignored the many others that indicated continued,

severe impairment."). That is exactly what the ALJ did here when he chose two isolated treatment records to discount plaintiff's frequent complaints of and treatment for dizziness/vertigo.

Accordingly, this was not a specific, clear and convincing reason, supported by substantial evidence, to discount plaintiff's subjective symptom testimony.

### 4. Conclusion

Based on the foregoing, the ALJ's subjective symptom testimony determination was not "sufficiently specific" to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit his testimony regarding the intensity, persistence, and limiting effects of his symptoms. Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). Remand is warranted on this issue.

## B. THE ALJ'S STEP TWO FINDING

### 1. Legal Standard

At step two of the five-step process, plaintiff has the burden to provide evidence of a medically determinable physical or mental impairment that is severe and that has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508, 404.1509, 404.1520(a)(4)(ii); see generally Bowen v. Yuckert, 482 U.S. 137, 148, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment"). This must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. The Commissioner's regulations define "symptoms" as a claimant's own description of her physical or mental impairment. 20 C.F.R. § 404.1528. "Signs," by contrast, "are anatomical, physiological, or psychological abnormalities which can be observed, apart from [the claimant's] statements . . . [,] [and] must be shown by medically acceptable clinical diagnostic techniques." Id. Finally, "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be

shown by the use of medically acceptable laboratory diagnostic techniques." Id. A claimant's statements about an impairment (i.e., "symptoms") "are not enough [by themselves] to establish that there is a physical or mental impairment." Id.

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen, 80 F.3d at 1290. A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities. Yuckert, 482 U.S. at 153-54 & n.11 (Social Security claimants must make "*de minimis*" showing that impairment interferes with ability to engage in basic work activities) (citations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); see also 20 C.F.R. § 404.1521(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ." 20 C.F.R. § 404.1521(b). It also includes mental functions such as the ability to understand, carry out, and remember simple instructions, deal with changes in a routine work setting, use judgment, and respond appropriately to supervisors, coworkers, and usual work situations. See SSR 85-28.

When reviewing an ALJ's findings at step two, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." Webb, 433 F.3d at 687 (citing Yuckert, 841 F.2d at 306 ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

**2. Analysis**

Plaintiff contends that the record evidence demonstrates that he experiences headaches, "the intensity and frequency" of which have increased since he suffered a stroke on June 12, 2012, and that he experiences both headaches and tinnitus "on an ongoing basis." [JS at 4 (citations

omitted).] Although plaintiff submits that the ALJ erred when he found plaintiff's headaches were "non-severe," and did "not explain how he arrived to this conclusion," he goes on to state that the "ALJ conclude[d] that the headaches are non-severe because they responded to trigger point injections." [Id. (citing AR at 21).] Plaintiff submits that the ALJ should have "consider[ed] the combined effect of all of [plaintiff's] impairments on his . . . ability to function, without regard to whether each alone is sufficiently severe." [Id. (citing Smolen, 80 F.3d at 1289-90). He contends that the ALJ considered only "a one time treatment [with a trigger point injection] that only provided temporary pain relief." [Id.]

Defendant responds that the ALJ properly found that plaintiff's headaches were non-severe because they responded well to "conservative treatment in the form of trigger point injections," and occurred only intermittently. [JS at 5 (citing AR at 21, 24).] Defendant points out that only five of the twenty-four records plaintiff cited to in support of his claim of headaches contained any reference to headaches, and even those "do not undermine the ALJ's nonseverity determination." [Id. (citing AR at 278, 313, 325, 340, 391).]

Because the matter is being remanded to reconsider plaintiff's subjective symptom testimony, the ALJ on remand shall also reconsider at step two all of plaintiff's alleged impairments, including, but not limited to, his complaints of headaches and tinnitus, and the limitations, if any, resulting from these impairments.

**C.   THE ALJ'S RFC DETERMINATION**

Plaintiff contends that although the ALJ found plaintiff had the severe impairment of vertigo, he failed to "accurately incorporate" that impairment when he made his RFC determination. [JS at 7-8.] Plaintiff states that in order to perform the "considerable lifting required for a full range of medium work,"[8] frequent bending and stooping are usually required, and "being on one's feet for most of the workday is critical." [JS at 8 (citing SSR 83-10).] Plaintiff testified at the hearing that

---

[8] The ALJ found plaintiff could perform work at all exertional levels, but the three occupations the ALJ determined plaintiff could perform were at the medium-exertional level. [JS at 7-8 (citing AR at 22, 27, 54).]

he experiences vertigo/dizziness when lifting or bending, turning his head from side to side, walking, lying down, and standing in one place for a long time. [AR at 49-51, 53, 56.] He submits that given his vertigo, he is going "to experience problems with frequent bending-stooping," and at "the very minimum, the ALJ had a duty to inquire from the [VE] how limited bending and/or stooping, because of vertigo, would affect an individual's ability to perform medium work." [Id.]

Defendant responds that plaintiff's "presumed bending and stooping limitations . . . [are] entirely theoretical, based not on the facts of Plaintiff's case but on a statement in [SSR] 83-10, that medium work, in general, requires frequent bending and stooping." [Id.] Defendant submits, therefore, that plaintiff's assertion that he may have problems with frequent bending-stooping as a result of his vertigo is speculation. [Id.] Defendant also notes that the ALJ found that plaintiff's vertigo, while a severe impairment, is "largely controlled by medication." [Id. at 8 (citing AR at 21, 23, 25, 313 (medication reduced occurrences of vertigo), 383-84 (plaintiff denied dizziness), 376 (according to defendant, plaintiff told his treating provider that his chronic dizziness had been "resolved"[9] by medication)).] Defendant further argues that any error was harmless because the DOT requirements for two of the three jobs identified by the VE -- hand packager and laundry sorter -- do not involve any stooping and, although the DOT does not assess the amount of bending required for those jobs, it does state that the hand packager job requires occasional balancing (up to one-third of the time), while the laundry sorter job does not require any balancing. [JS at 10-11 (citing DOT Nos. 920.587-018, 361.684-014).] Defendant contends that "balancing" is an "even more challenging act" than bending. [JS at 10.] Defendant concludes that the two jobs require "at most, only limited bending." [JS at 11.]

Stooping is defined by the Administration as "bending the body downward and forward by bending the spine at the waist," and further described as a "more strenuous form[] of bending" the spine. SSR 83-10; SSR 85-15; see also Davis v. Colvin, 2016 WL 6267915, at *2 (C.D. Cal. Oct. 26, 2016) (noting that stooping requires some ability to bend, while bending does not necessarily

---

[9] In fact, as discussed herein, the note appears to state that plaintiff was *complaining of* chronic dizziness and had stated that it was "relieved" (not resolved) with medicine. [See AR at 376.]

16

require an ability to stoop) (citing SSR 85-15). Balancing is defined as "maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces." SSR 96-9p (citing the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO")). Accordingly, the Court does not agree with defendant's broad statement that balancing is "even more challenging" than bending (or stooping), as these appear to be treated as completely different activities.

Because the matter is being remanded to reconsider plaintiff's subjective symptom testimony, the ALJ on remand shall also reconsider the limitations on plaintiff's ability to work, if any, resulting from his vertigo/dizziness.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any

17

testimony. Based on his reassessment of plaintiff's subjective symptom testimony, the ALJ at step two shall reassess the severity of plaintiff's impairments, including, but not limited to, his headaches and tinnitus. Finally, the ALJ shall consider the limitations, if any resulting from plaintiff's vertigo/dizziness, reassess plaintiff's RFC, and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[10] See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. 2017).

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 14, 2017

_Paul L. Abrams_
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[10] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work as a mechanic.